## GRIMM v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 424. Argued and submitted January 23, 1895. — Decided March 4, 1895.

While the possession of obscene, lewd, or lascivious books, pictures, etc., constitutes no offence under the act of September 26, 1888, c. 1039, 25 Stat. 496, it is proper in an indictment for committing the offence pro-

hibited by that act to allege the possession as a statement, tending to interpret a letter written and posted in violation of that act.

A letter, however innocent on its face, intended to convey information in respect of the place or person where or of whom the objectionable matters described in the act could be obtained, is within the statute.

In an indictment for a violation of that act it is sufficient to allege that the pictures, papers, and prints were obscene, lewd, and lascivious, without incorporating them into the indictment, or giving a full description of them.

When a government detective, suspecting that a person is engaged in a business offensive to good morals, seeks information under an assumed name directly from him, and that person responding thereto, violates a law of the United States by using the mails to convey such information, he cannot, when indicted for that offence, set up that he would not have violated the law, if the inquiry had not been made of him by the government official.

SECTION 3893, Revised Statutes, as amended by section 2 of the act of Congress of September 26, 1888, c. 1039, 25 Stat. 496, provides that "every obscene, lewd, or lascivious book, pamphlet, picture, . . . and every written or printed card, letter, . . . giving information, directly or indirectly, where or how, or of whom, or by what means any of the hereinbefore mentioned matters, articles, or things may be obtained or made, whether sealed as first-class matter or not, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails nor delivered from any post-office nor by any letter-carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, . . . shall, for each and every offence, be fined upon conviction thereof not more than five thousand dollars, or imprisoned at hard labor not more than five years, or both, at the discretion of the court."

On June 6, 1891, the defendant was indicted in the District Court of the United States in and for the Eastern Division of the Eastern Judicial District of Missouri for a violation of this statute. The indictment was in four counts. The second is as follows:

· "And the grand jurors aforesaid upon their oaths aforesaid do further present that afterwards, to wit, on the day and year aforesaid, at the division and district aforesaid, said

William Grimm, late of said division of said district, then and there received a letter, addressed and delivered to him, of the following tenor:

"'RICHMOND, IND., July 21, 1890.

"'MR. WILLIAM GRIMM, St. Louis, Mo.

"'Dear Sir: A friend of mine has just showed me some fancy photographs and advised me that they could be obtained from you. I am on the road all the time, and I am sure many of them could be sold in the territory over which I travel. How many different kinds can you furnish? Send me price list showing your rates by the hundred and dozen. Address me at once at Indianapolis, Ind., care Bates House, and I will send you a trial order.

"'HERMAN HUNTRESS.'

"And the grand jurors aforesaid upon their oaths aforesaid do further present that on the day and year first aforesaid the said William Grimm then and there had in his possession and under his control a large number, to wit, eight hundred, obscene, lewd, and lascivious pictures, papers, and prints of an indecent character and intended and adapted for an indecent and immoral use, and that said William Grimm, in response to said letter, on the day and year first aforesaid, did then and there unlawfully, feloniously, and knowingly deposit and cause to be deposited in the post office of the United States at St. Louis, Missouri, for mailing and delivery, a written and printed letter and notice giving information, directly and indirectly, to one Robert W. McAfee and divers other persons, whose names are to the jurors aforesaid unknown and for that reason cannot be herein stated, how, where, of whom, and by what means obscene, lewd, and lascivious pictures, papers, and prints of an indecent character and intended and adapted for an indecent and immoral use might be obtained, which said letter and notice was then and there non-mailable matter and was then and there contained in an envelope and wrapper bearing and having thereon the address and superscription following, to wit, 'Mr. Herman

Huntress, care of Bates House, Indianapolis, Ind.,' and which said letter and notice is of the following tenor:

"'Wm. Grimm, photograph and art studio, N. E. cor. of Jefferson avenue and Olive street.

"'St. Louis, July 22, 1890.

"'Mr. Huntress, Richmond.

"'Dear Sir: I received your letter this morning. I will let you have them for $2.00 per doz. & $12.50 per 100. I have about 200 negatives of actresses.

"'Respectfully, Wm. Grimm.'

"And the grand jurors aforesaid upon their oaths aforesaid do further present that on the day and year first aforesaid the said William Grimm, when he so deposited and caused to be deposited said last-named letter and notice in said post-office, unlawfully, feloniously, and knowingly meant and intended thereby to give notice and did thereby give notice and information to the writer of said first-named letter and to said McAfee and divers other persons, whose names are to the grand jurors aforesaid unknown, where, how, of whom, and by what means obscene, lewd, and lascivious pictures, papers, and prints of an indecent character and intended and adapted for an indecent and immoral use might be obtained, contrary to the form of the statutes of the United States in such case made and provided and against its peace and dignity."

The fourth count charged another and like offence in a similar form. A demurrer to the indictment having been overruled, the case came on for trial, and a verdict was returned finding the defendant guilty under the second and fourth counts, and not guilty under the first and third. A motion for a new trial having been overruled, the defendant was, on May 21, 1892, sentenced to imprisonment for one year and one day. To reverse such judgment this writ of error was taken.

*Mr. D. P. Dyer* for plaintiff in error submitted on his brief.

*Mr. Solicitor General* for defendants in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The sufficiency of the indictment is the first question presented. It is insisted that the possession of obscene, lewd, or lascivious pictures constitutes no offence under the statute. This is undoubtedly true, and no conviction was sought for the mere possession of such pictures. The gravamen of the complaint is that the defendant wrongfully used the mails for transmitting information to others of the place where such pictures could be obtained, and the allegation of possession is merely the statement of a fact tending to interpret the letter which he wrote and placed in the post-office.

It is said that the letter is not in itself obscene, lewd, or lascivious. This also may be conceded. But however innocent on its face it may appear, if it conveyed, and was intended to convey, information in respect to the place or person where, or of whom, such objectionable matters could be obtained, it is within the statute.

Again, it is objected that it is not sufficient to simply allege that the pictures, papers, and prints were obscene, lewd, and lascivious; that the pleader should either have incorporated them into the indictment or given a full description of them so that the court could, from the face of the pleading, see whether they were in fact obscene. We do not think this objection is well taken. The charge is not of sending obscene matter through the mails, in which case some description might be necessary, both for identification of the offence and to enable the court to determine whether the matter was obscene, and, therefore, non-mailable. Even in such cases it is held that it is unnecessary to spread the obscene matter in all its filthiness upon the record; it is enough to so far describe it that its obnoxious character may be discerned. There the gist of the offence is the placing a certain objectionable article in the mails, and, therefore, that article should be identified and disclosed; so, here, the gist of the

offence is the mailing of a letter giving information, and, therefore, it is proper that such letter should be stated so as to identify the offence. But it does not follow that everything referred to in the letter, or concerning which information is given therein, should be spread at length on the indictment. On the contrary, it is sufficient to allege its character and leave further disclosures to the introduction of evidence. It may well be that the sender of such a letter has no single picture or other obscene publication or print in his mind, but, simply knowing where matter of an obscene character can be obtained, uses the mails to give such information to others. It is unnecessary that unlawful intent as to any particular picture be charged or proved. It is enough that in a certain place there could be obtained pictures of that character, either already made and for sale or distribution, or from some one willing to make them, and that the defendant, aware of this, used the mails to convey to others the like knowledge.

A final matter complained of grows out of these facts : It appears that the letters to defendant — the one signed " Herman Huntress," described in the second count, and one signed " William W. Waters," described in the fourth count — were written by Robert W. McAfee; that there were no such persons as Huntress and Waters; that McAfee was and had been for years a post-office inspector in the employ of the United States, and at the same time an agent of the Western Society for the Suppression of Vice; that for some reasons not disclosed by the evidence McAfee suspected that defendant was engaged in the business of dealing in obscene pictures, and took this method of securing evidence thereof; that after receiving the letters written by defendant, he, in name of Huntress and Waters, wrote for a supply of the pictures, and received from defendant packages of pictures which were conceded to be obscene. Upon these facts it is insisted 'that the conviction cannot be sustained, because the letters of defendant were deposited in the mails at the instance of the government, and through the solicitation of one of its officers; that they were directed and mailed to fictitious persons; that

no intent can be imputed to defendant to convey information to other than the persons named in the letters sent by him, and that as they were fictitious persons there could in law be no intent to give information to any one. This objection was properly overruled by the trial court. There has been much discussion as to the relations of detectives to crime, and counsel for defendant relies upon the cases of *United States* v. *Whittier*, 5 Dillon, 35; *United States* v. *Matthews*, 35 Fed. Rep. 890; *United States* v. *Adams*, 59 Fed. Rep. 674; *Saunders* v. *People*, 38 Michigan, 218, in support of the contention that no conviction can be sustained under the facts in this case.

It is unnecessary to review these cases, and it is enough to say that we do not think they warrant the contention of counsel. It does not appear that it was the purpose of the post-office inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business. The mere facts that the letters were written under an assumed name, and that he was a government official — a detective, he may be called — do not of themselves constitute a defence to the crime actually committed. The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defence that he would not have violated the law if inquiry had not been made of him by such government official. The authorities in support of this proposition are many and well considered. Among others reference may be made to the cases of *Bates* v. *United States*, 10 Fed. Rep. 92, and the authorities collected in a note of Mr. Wharton, on page 97; *United States* v. *Moore*, 19 Fed. Rep. 39; *United States* v. *Wight*, 38 Fed. Rep. 106, in which the opinion was delivered by Mr. Justice Brown, then District Judge, and concurred in by Mr. Justice Jackson, then Circuit Judge; *United States* v. *Dorsey*, 40 Fed. Rep. 752; *Commonwealth* v. *Baker*, 155 Mass. 287, in which the court held that one who goes to a house alleged to be kept for illegal gaming,

and engages in such gaming himself for the express purpose of appearing as a witness for the government against the proprietor, is not an accomplice, and the case is not subject to the rule that no conviction should be had on the uncorroborated testimony of an accomplice; *People* v. *Noelke*, 94 N. Y. 137, in which the same doctrine was laid down as to the purchaser of a lottery ticket, who purchased for the purpose of detecting and punishing the vendor; *State* v. *Jansen*, 22 Kansas, 498, in which the court, citing several authorities, discusses at some length the question as to the extent to which participation by a detective affects the liability of a defendant for a crime committed by the two jointly; *State* v. *Stickney*, 53 Kansas, 308. But it is unnecessary to multiply authorities. The law was actually violated by the defendant; he placed letters in the post-office which conveyed information as to where obscene matter could be obtained, and he placed them there with a view of giving such information to the person who should actually receive those letters, no matter what his name; and the fact that the person who wrote under these assumed names and received his letters was a government detective in no manner detracts from his guilt.

These are all the questions presented by counsel. We see no error in the rulings of the trial court, and the judgment is, therefore,

*Affirmed.*